IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| TRAVELERS PROPERTY CASUALTY ) | |
| COMPANY OF AMERICA, as subrogee of ) | |
| Leslie's Pool Mart, Inc., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| LESLIE'S POOLMART, INC. ) | |
| ) | |
| Intervenor Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION 07-0704-KD-C |
| ) | |
| THE LAMAR COMPANY, LLC., f/k/a ) | |
| LAMAR CORPORATION, et al., ) | |
| ) | |
| Defendant/Third Party Plaintiff, ) | |
| ) | |
| R. R. CASSIDY, INC., ) | |
| ) | |
| Third Party Defendant. ) | |

## ORDER

This matter is before the Court on the motion for summary judgment filed by plaintiffs Travelers Property Casualty Company of America (Travelers) and intervenor, Leslie's Poolmart, inc. (Leslie's) and brief in support (doc. 80, 81); the response filed by defendant The Lamar Company, LLC (Lamar) (doc. 85), and Travelers and Leslie's reply (doc. 88). Upon consideration and for the reasons set forth herein, the motion for summary judgment is **DENIED.**

    I.    <u>Background</u>

On July 16, 1986, Leslie's Pool Mart, Inc. (Leslie's) entered into a lease agreement with Lamar whereby a portion of Leslie's property at 3945 Airport Boulevard in Mobile, Alabama was leased to Lamar to construct a billboard sign and to maintain advertisements on the sign.

During Hurricane Katrina, on or about August 29, 2005, the sign fell on Leslie's building and caused damage. Travelers insured Leslie's and paid the damage claim.

Travelers as Leslie's subrogee then filed suit against Lamar in the Circuit Court of Mobile County, Alabama, alleging claims for negligence for failing to properly design, construct, erect, install, repair or maintain the sign; negligent hiring, supervision, and training of Lamar's employees involved in the design, construction, etc.; and breach of contract and contractual indemnity, both based upon the lease agreement. The case was removed to this court.

Subsequent thereto, Leslie's motion to intervene was granted and Leslie's filed its complaint in intervention to bring claims against Lamar for breach of contract and contractual indemnity. Lamar filed a third party complaint for indemnity against its alleged subcontractor for construction of the sign, R.R. Cassidy, Inc., alleging that Lamar is entitled to implied contractual indemnity and common law indemnity. Travelers then amended its complaint to add a claim against Lamar for negligent supervision of its subcontractor. Travelers and Leslie's now move for summary judgment against Lamar and seek judgment of this court that Lamar was negligent and in breach of its contractual obligations to Leslie's to maintain the sign because Lamar failed to take down the sign message before Hurricane Katrina.

II.     Standard of review

Summary judgment should be granted only if "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(c).[1]  The party seeking summary judgment bears "the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11th Cir. 1991).  The party seeking summary judgment always bears the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  Id. (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)).  If the nonmoving party fails to make "a sufficient showing on an essential element of her case with respect to which she has the burden of proof," the moving party is entitled to summary judgment. Celotex, 477 U.S. at 323.  "In reviewing whether the nonmoving party has met its burden, the court must stop short of weighing the evidence and making credibility determinations of the truth of the matter.  Instead, the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998-999 (11th Cir. 1992), cert. den., 507 U.S. 911 (1993) (internal citations and quotations omitted).  The mere existence of a factual dispute will not automatically necessitate denial; rather, only factual disputes that are material preclude entry of summary judgment. Lofton v. Secretary of Dep't of Children & Family Serv., 358 F.3d 804,

---

[1] Rule 56(c) of the Federal Rules of Civil Procedure, provides that summary judgment shall be granted:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c).

809 (11th Cir. 2004), cert. den., 534 U.S. 1081 (2005).

    III.    The Lease

The relevant portions of the lease contract state as follows

> Lessor hereby leases to Lamar, its successors or assigns as much of the premises located at 3945 Airport Blvd. . . . as may be necessary for the construction, repair and relocation of advertising structures and supports thereof, with the right of access to and egress from structures by Lamar employees and vehicles and the right to maintain advertisements on such structures . . .

(doc. 81-2).

> Lamar may terminate this lease . . . if Lamar is prevented from constructing or maintaining the structures by reason of governmental law, regulation, or order . . .

(doc. 81-2)

> Lamar agrees to indemnify lessor from all injury and damages to third parties caused by the installation, maintenance, or dismantling of any advertising structures or displays during the term of this lease and to repair any damage to leased premises resulting from the installation, maintenance, or dismantling of such advertising structures or displays, less ordinary wear and tear.

(doc. 81-2).

    IV.    Preparation for Hurricane Katrina

In regard to Lamar's preparation for hurricanes generally, as well as Katrina, during the "day and a half or so before landfall" Lamar would "target" certain signs along the coast of Alabama, Mississippi and Florida, "break [its] offices up into crews", and remove the sign message of "as many as [they] can in the day and a half" and leave the pole and frame intact. (doc. 85-2, p. 35-36), deposition of Troy Tatum, Corporate Representative for Lamar). However, the crews do not get to take down every sign message. (Id. at p. 36).

Former Lease Manager Dwight Watford testified that all Lamar employees participated, that they would be given a list by group, and that the decision as to which sign message to take

4

down would be prioritized "based on the ones that were most important in the market, the ones that were vulnerable, that were the most vulnerable that damages could occur. . . . They would prioritize which ones needed to be taken down, because you couldn't take them all down of course. So that would be the thing to do when hurricanes came." (doc. 81-3, p. 3, Dwight Watford deposition). Watford also testified that he thought that preparing for a hurricane would be part of the maintenance of the sign. (Id. at p. 4).

Lamar sign construction crew foreman Julian Fowler testified that the decision as to when to begin pulling out the sign message sections was made by corporate management. (doc. 81-4, p. 6). He testified that when a hurricane was coming, the Lamar employees would be divided into several crews that would go out to their respective areas and randomly take down signs. (Id. at p. 7). He testified that he was assigned to Airport Boulevard during Katrina preparations and that the sign at Leslie's "[p]robably would" have been in his area (doc. 85-3, p. 43). Fowler testified as follows:

> Q. Did you ever come back east and get to [the sign at Leslie's]?
>
> A. No. It had been solid for twenty years, what would I want to worry with it for? You know?
>
> Q. Do you know if somebody else's crew  - - -
>
> A. It stood all them other hurricanes.
>
> Q. Do you know if somebody else's jurisdiction included this part of Airport, or was that yours?
>
> A. I wouldn't have known.

(doc. 85-3, p. 46).

Watford also testified that as part of the lease negotiations he told the lessors that if a sign

falls Lamar would take care of any damage to the landowners' property. (doc. 88-3). Watford testified as follows:

> I got asked that a lot, what if a sign falls - - - I would get asked that quite a bit. But I didn't have an answer until I went and asked my superiors what I should say. And that was, you know, before anything about the Act of God. And it was pretty much pad answer - - if there's a problem because of that sign, it's not their fault, we're going to take care of it.

(doc. 88-3, p. 9).

    V.    Analysis

        A.  Negligence

In Count One of the complaint, Travelers[2] alleges that Lamar owed a duty to Leslie's that Lamar's employees' actions would not result in damage to Leslie's property and among other allegations, that the employees' failure to maintain was negligent, in breach of that duty, and resulted in damage to Leslie's property. On motion for summary judgment, Travelers argues that as a matter of law Lamar's failure to take down the sign message at Leslie's as part of its hurricane preparation was negligent. Lamar responds that the issue of whether it breached any duty to Leslie's such that it acted negligently in making decisions regarding which signs to take down during hurricane preparation is a question for the trier of fact and cannot be decided as a matter of law.

The fact that Lamar's employees did not take down this sign message in preparation for Hurricane Katrina is not in dispute. However, Travelers has not provided any legal support for its argument that the failure to take down the sign message renders Lamar negligent as a matter

---

[2] Lamar correctly points out that Leslie's complaint in intervention does not contain a claim for negligence but instead contains Count One for breach of contract and Count Two for contractual indemnity (doc. 30).

6

of law.  See Lyes v. City of Riviera Beach, Fla., 126 F.3d 1380, 1388 (11th Cir.1997) (explaining that "the onus is upon the parties to formulate arguments").  The Court agrees that issues of fact remain to be decided by a jury.  Accordingly, the motion for summary judgment as to Lamar's alleged negligence is **DENIED**.

      B.  Breach of contractual duty to maintain or repair the sign

On motion for summary judgment, Travelers and Leslie's argue that as a matter of law Lamar's failure to take down the sign message as part of its hurricane preparation, constituted a failure to maintain the sign and a breach of Lamar's duty under the lease to maintain the sign. Travelers and Leslie's also argue that should the Court find the lease ambiguous as to whether there is a duty to maintain, then the Court may consider extrinsic evidence to construe the intent of the parties.  Travelers and Leslie's argue that the pre-contract negotiations as evidenced by the testimony of Watford (Lamar's lease manager during the time period at issue), establish that lessors were routinely guaranteed as part of the lease that Lamar would be responsible if its sign fell onto and damaged the leased premises in any circumstance.

Lamar responds that the express terms of the lease do not require Lamar to remove the sign message when a hurricane is predicted and since Alabama law does not recognize an implied contract when there is an express contract, there was no contractual duty on the part of Lamar to remove the sign and thus no breach of contract.  Lamar asserts that its former employee Watford did not testify on behalf of Lamar and that his opinion that hurricane preparation constituted sign maintenance cannot be used to establish the policies or procedures of Lamar. Lamar also argues that the issue of whether Lamar breached any duty to Leslie's to take down the sign message is a question for the trier of fact.

Under Alabama law, "[w]hether a contract is ambiguous is a question of law for the trial court to decide[.] . . . A contract is ambiguous if it is reasonably susceptible of more than one meaning. . . . [T]he trial court, in determining the meaning of the contract, first must employ established rules of contract construction to resolve the ambiguity." Carroll v. LJC Defense Contracting, Inc.,  - - - So. 3d - - - , 2009 WL 1353266, 6 (Ala. Civ. App. May 15, 2009) (internal citations omitted; emphasis omitted).  The established rules of contract construction were explained in Homes of Legend, Inc. v. McCullough, 776 So. 2d 741 (Ala. 2000), as follows:

> Under general Alabama rules of contract interpretation, the intent of the contracting parties is discerned from the whole of the contract.  Where there is no indication that the terms of the contract are used in a special or technical sense, they will be given their ordinary, plain, and natural meaning.  If the court determines that the terms are unambiguous (susceptible of only one reasonable meaning), then the court will presume that the parties intended what they stated and will enforce the contract as written.  On the other hand, if the court determines that the terms are ambiguous (susceptible of more than one reasonable meaning), then the court must use established rules of contract construction to resolve the ambiguity.  Under those established rules of contract construction, where there is a choice between a valid construction and an invalid construction the court has a duty to accept the construction that will uphold, rather than destroy, the contract and that will give effect and meaning to all of its terms.  Additionally, "if there exists inconsistency between two clauses of a contract which cannot be reconciled, the inconsistency must be resolved in favor of the prior clause, unless an intention to thereafter qualify is plainly expressed."  Last, if all other rules of contract construction fail to resolve the ambiguity, then, under the rule of contra proferentem, any ambiguity must be construed against the drafter of the contract.

Homes of Legend, Inc., 776 So.2d at 746 (internal citations omitted).

> If, after applying established rules of contract construction, the trial court is unable to resolve the ambiguity and factual issues arise, only then does the resolution of the ambiguity become[ ] a task for the jury.  Alabama courts have consistently held that if factual disputes arise with respect to matters such as
>
> > [the] facts and circumstances leading up to and attending [the] execution

8

> [of the contract], [the] relation and condition of [the] parties, [the] nature
> and situation of [the] subject matter, and [the] apparent purpose of making
> the contract,
>
> then such disputes should be resolved by the finder of fact. If, however, there is
> no dispute concerning such factual questions, then the trial court should determine
> the meaning of the contract in light of the undisputed facts.

Carroll, - - - So. 3d - - - , 2009 WL 1353266, 6 (internal citations omitted; emphasis omitted).

The lease does not contain any provision which addresses Lamar's obligations regarding general sign maintenance. Rather the lease simply says that Lamar has the "right" to maintain advertisements. Thus, Travelers and Leslie's cannot prevail on a breach of contractual duty to maintain the sign.

However, under the lease Lamar is obligated "to repair any damage to leased premises resulting from the installation, maintenance, or dismantling of such advertising structures or displays . . . " (doc. 81-2). Travelers and Leslie's argue that the term "leased premises" includes Leslie's building because it includes all grounds necessary to construct, repair, and relocate the sign. Lamar argues that although the lease required Lamar to repair damages to the leased premises, the definition of leased premises in the contract does not include Leslie's building but instead refers only to a small portion of Leslie's property necessary for construction and maintenance of the sign.

As to "leased premises", the lease indicates that Lamar has leased "as much of the premises located at 3945 Airport Blvd. . . . as may be necessary for the construction, repair and relocation of advertising structures and supports thereof, with the right of access to and egress from structures by Lamar employees and vehicles . . . " (doc. 81-2). Thus, in order to prevail on their argument, Travelers and Leslie's must establish that there is no genuine issue of material

9

fact in dispute that Leslie's storefront was "necessary for the construction, repair and relocation of advertising structures and supports thereof" such that it becomes part of the "leased premises". (Id.)  Travelers and Leslie's have failed to make this showing.  Therefore, the Court finds that there is a factual question as to what area of the premises located at 3945 Airport Boulevard was "necessary" under the lease.  Accordingly, the motion for summary judgment as to breach of a contractual duty to repair the leased premises is **DENIED**.

    VI.    Conclusion

Accordingly, upon consideration of the motions, response, and supporting exhibits, and for the reasons set forth herein, Travelers and Leslie's motion for summary judgment is **DENIED.**

**DONE** and **ORDERED** this the 13th day of July, 2009.

                                                   **s/ Kristi K. DuBose**
                                                   **KRISTI K. DuBOSE**
                                                   **UNITED STATES DISTRICT JUDGE**